[No. 32230.  Department One.  July 1, 1953.]

SUNNY BROOK FARMS, *Respondent and Cross-appellant*, v. SVERRE N. OMDAHL, *as State Director of Agriculture, Appellant.*[1]

[1]Reported in 259 P. (2d) 383.

The *Attorney General* and *William C. Klein, Assistant,* for appellant.

*Scott, Langhorne & McGavick,* for respondent and cross-appellant.

WEAVER, J.—This is an appeal from a decree, entered May 19, 1952, restraining defendant, as director of agriculture of the state of Washington, his servants, agents, and employees

". . . from suspending the permit of the plaintiff to sell, and to offer for sale, milk and milk products as defined in Chapter 168 of the Laws of 1949 of the State of Washington, in the State of Washington, upon the basis of the statements contained in defendant's written notice to plaintiff, upon the trial of this cause."

Defendant (appellant) urges, *inter alia,* that the trial court should not have enjoined defendant's actions, because plaintiff had neither exhausted nor availed itself of the administrative remedy provided by statute. Plaintiff cross-appeals from the findings of the trial court that it

". . . makes no finding on the constitutionality of Section 3, Chapter 168 of Laws of 1949,"

which plaintiff claims to be unconstitutional.

The evidence discloses that defendant's inspector obtained a quart carton of milk on September 19, 1951, from a retail market. The sealed carton bore plaintiff's label and advertisement. Upon analysis of the contents, by a competent chemist, it appeared that the milk had been adulterated by the addition of water.

October 5, 1951, defendant wrote plaintiff:

"Milk offered for sale by your dairy in Vancouver, Washington on or about September 19, 1951 was found to be adulterated by the addition of water. The sale or offering for sale of adulterated milk is in direct violation of the laws of the State of Washington, specifically, Section 2, Chapter 168, Laws of 1949.

"In view of the serious nature of this violation, you are hereby notified that your permit to sell milk or milk products in the State of Washington is suspended, effective October 10, 1951. No milk or milk products are to be sold or offered for sale in the State of Washington by the Sunnybrook Farms of Portland, Oregon on or after that date."

This action was commenced in Thurston county, October 9, 1951, the day before the permit suspension became effective. Plaintiff did not request a hearing before the director as provided by statute. A temporary restraining order was issued against defendant. It was extended, *pendente lite*, on November 13, 1951. The case was tried January 23, 1952. It was presented on appeal to this court May 13, 1953.

The statutes applicable for consideration are these:

Section 1 (n) of the fluid milk and fluid milk products act (Laws of 1949, chapter 168, p. 432; Rem. Supp. 1949, § 6266-30 (n); RCW 15.36.030) provides:

"Any milk to which water has been added, . . . shall be deemed adulterated."

Section 2 of the act (Laws of 1949, chapter 168, p. 433; Rem. Supp. 1949, § 6266-31; RCW 15.36.070 omits the words in brackets) provides in part:

"No person shall produce, sell, offer, or expose for sale, or have in possession with intent to sell, in the fluid state for direct consumption as such, any milk or milk product which is adulterated, misbranded, or ungraded. . . .

"Adulterated, misbranded, and/or ungraded milk or milk products may be impounded and disposed of by the Director [of Agriculture]."

Section 3 of the act (Laws of 1949, chapter 168, p. 434; Rem. Supp. 1949, § 6266-32; RCW 15.36.080 omits the words in brackets and refers to "chapter" instead of "act") provides in full:

"It shall be unlawful for any person to transport, or to sell, or offer for sale, or to have in storage where milk or milk products are sold or served, any milk or milk product defined in this act, who does not possess a permit from the Director [of Agriculture] or an authorized inspection service as defined in this act.

"Only a person who complies with the requirements of this act shall be entitled to receive and retain such a permit. Permits shall not be transferable with respect to persons and/or locations.

"Such a permit may be temporarily suspended by the Director [of Agriculture] or health officer of a milk inspection unit upon violation by the holder of any of the terms of this act, or for interference with the Director [of Agriculture] or health officer of a milk inspection unit in the performance of his duties, or revoked after an opportunity for a hearing by the Director [of Agriculture] upon serious or repeated violations."

Section 18 (b) of the act (Laws of 1949, chapter 168, p. 458; Rem. Supp. 1949, § 6266-46 (b); RCW 15.36.580 omits the words in brackets and refers to "chapter" instead of "act") provides:

"In case of a written protest from any fluid milk producer, fluid milk distributor or health officer, concerning the enforcement of any provisions of this act, or of any rules and regulations thereunder, the Director [of Agriculture], or his duly authorized assistant, within ten (10) days after receipt of such protest and after five (5) days written notice thereof to the party against whom the protest is made, shall hold a summary hearing in the county where either the party protesting or protested against resides, upon the completion of which the Director [of Agriculture] or his duly authorized assistant shall make such written findings of fact and order as the circumstances may warrant: *Provided*, [*however*], That if the protest originates with a producer, the hearings shall be held in the county where the protesting producer resides. Such findings and order shall be final and conclusive upon all parties from and after their effective date, which date shall be five (5) days after being signed and deposited postage prepaid in the United States mails addressed to the last known address of all said parties. An appeal from such findings or order may be taken within ten (10) days of their effective date to the Superior Court of the county in which the hear-

ing is held upon such notice and in such manner as appeals are taken from judgments rendered in Justice Court."

A "milk distributor" is defined in the act as

". . . any person who offers for sale or sells to another any milk or milk products for human consumption as such." Laws of 1949, chapter 168, § 1 (p), p. 432; Rem. Supp. 1949, § 6266-30 (p); RCW 15.36.040.

Plaintiff alleges in its complaint that it is engaged in the general dairy business, including the purchasing, processing, and wholesale selling of milk and milk products for human consumption, operating under a permit issued by defendant "to sell milk and milk products as defined in the Washington Uniform Fluid Milk act, Chapter 168, Laws of 1949, in the State of Washington."

Plaintiff, as a distributor of milk, operating under a permit from the state director of agriculture, is subject to the controls of the fluid milk and fluid milk products act. It was charged with offering for sale milk which had been adulterated with water. In protection of the public, the defendant not only has the right but the duty to suspend permits, under authority of § 3 of the act, when he has reasonable grounds to believe that provisions of the act have been violated.

It would have been more accurate, had defendant designated in his letter of October 5, 1951, that he was *temporarily* suspending plaintiff's permit, for that is the extent to which he was authorized to act, without notice, under § 3. He cannot revoke a permit without a hearing. Plaintiff, however, could not have been misled by this.

"Suspension" is defined in Bouvier's Law Dictionary, (3rd Rev. Rawle's 8th ed.) 3212, as follows:

"Suspension. A temporary stop of a right, of a law, and the like. . . .

"Suspension of a right in an estate is a partial extinguishment or an extinguishment for a time. It differs from an extinguishment in this: a suspended right may be revived; one extinguished is absolutely dead."

Plaintiff's permit was not suspended forthwith. Plaintiff was notified that suspension would not become effective

until the expiration of five days. In § 18 (b), the legislature set forth, clearly and unambiguously, the procedure by which one feeling himself aggrieved, by any action of the director in the enforcement of any provision of the act, might have a speedy hearing should he desire it. The statute requires the director, upon request, to hold a hearing at which the protestant has an opportunity to present his side of the controversy. It gives to the protestant the protection of an eventual and orderly appeal to the courts.

When an adequate administrative remedy is provided by statute, relief must be sought by exhausting that remedy before the courts will act. We have recognized the doctrine of the exhaustion of remedies in *State ex rel. Shomaker v. Superior Court*, 193 Wash. 465, 476, 76 P. (2d) 306; *McAvoy v. Ernst*, 196 Wash. 416, 83 P. (2d) 245; and *Bowen v. Department of Social Security*, 14 Wn. (2d) 148, 127 P. (2d) 682. (See annotation "Regulations as to Milk: b. Hearings; . . ." 122 A. L. R. 1062 at 1122.) The doctrine involves a policy of orderly procedure which favors a preliminary administrative sifting process. This is particularly true when the issue presented involves technical matters peculiarly within the competence and special skills of an administrative authority.

Plaintiff made no attempt to comply with the procedure provided by statute for its protection. In *Co-Operative Dairymen of Fraser, N. Y., Inc. v. Ten Eyck,* 158 Misc. 726, 286 N. Y. S. 351, wherein the plaintiff, a distributor of milk, attempted to secure an injunction to prevent the milk control board from canceling its license, the court said:

"It has been clearly held that if the orders made under the acts in question are not arbitrary fiats, the courts will not interfere, and that one who is dissatisfied with an administrative order made under the acts must utilize the administrative remedy provided for in the statute before resorting to suit for injunction to contest the validity of the orders. (*Hegeman Farms Corp. v. Baldwin,* 293 U. S. 163). The same rule has been enunciated in cases involving analogous provisions of statutes of other States. (*Pacific States Box & Basket Co. v. White,* 296 U. S. 176; 56 S. Ct.

159, 163; *Dismuke v. United States*, 296 U. S. 554; 56 S. Ct. 400, 403.)"

Under the circumstances of this case, the court erred when it entered the permanent restraining order against defendant on May 19, 1952. It is ordered dissolved. To hold otherwise would undermine the effectiveness of the director of agriculture in carrying out the duties placed upon him by statute for the protection of the public health.

We turn now to plaintiff's cross-appeal based on the claim that § 3 of the act (quoted *supra*) is unconstitutional because:

"The Director of Agriculture is not required by any part of said Section 3, or any other part of the Act, to give the holder of a permit any notice of suspension of his permit, nor is any provision made for any proceeding at which such holder of a permit can be heard in defense of his actions."

The fluid milk and fluid milk products act is a legislative exercise of the police power. Courts are reluctant to encroach upon the police power of the state, especially when it treats with matters of public health.

"It is well settled law that there are certain businesses and vocations subject to regulation by the exercise of the police power, to the extent of even entirely prohibiting them; this upon the ground of their potential evil consequences." *Bungalow Amusement Co. v. Seattle*, 148 Wash. 485, 489, 269 Pac. 1043, 60 A. L. R. 166.

Plaintiff's permit represents more than permission to do business. It permits plaintiff to distribute a product which, by reason of adulteration or contamination, may vitally affect the health of the public. Hence, distribution of milk is included in the class of businesses which may be inherently harmful and injurious to the public. See *Bungalow Amusement Co. v. Seattle, supra*, and cases cited. Under the police power, it may not only be regulated, but the right to distribute milk may be temporarily suspended when the director has reason to believe that the provisions of the act are being violated to the public harm.

Although the director may, in the public interest, suspend a permit temporarily without notice, he may not

revoke it without giving notice of hearing upon the issue of revocation. This is not a case, however, under a licensing statute in which no hearing is provided at the administrative level. The holder of a suspended permit may request a hearing. The director must grant the request. This clearly distinguishes the instant case from *Northern Cedar Co. v. French,* 131 Wash. 394, 230 Pac. 837, upon which plaintiff relies.

Plaintiff's claim that § 3 of the act is unconstitutional is not well taken.

The decree is reversed.

GRADY, C. J., MALLERY, HILL, and OLSON, JJ., concur.

[1]Reported in 259 P. (2d) 379.