56 Wn.2d 407 (1960)
353 P.2d 881
THE STATE OF WASHINGTON, on the Relation of Association of Washington Industries, Plaintiff,
v.
OTTO S. JOHNSON, as Acting Commissioner of the Employment Security Department, Respondent.[1]
No. 35470.
The Supreme Court of Washington, En Banc.
June 23, 1960.
*408 C. Lee Coulter, for relator.
The Attorney General, Paul J. Murphy and Richard M. Montecucco, Assistants, for respondent.
William J. Millard, Jr., amicus curiae.
PER CURIAM:
The relator, in this original proceeding, seeks a writ of mandate to compel the acting commissioner of the department of employment security to issue experience rating credits to it as a qualified employer. The stipulated facts are:
"IT IS HEREBY AGREED AND STIPULATED by and between the relator and the respondent, by and through their respective counsel herein, that the above entitled proceeding shall be submitted to the court upon the following statement of facts.
"(1) The Association of Washington Industries is a corporation organized under the statutes of the State of Washington with its principal place of business located in Seattle Washington; that it is a qualified employer as defined by the unemployment compensation statutes of the State of Washington and has been issued account number XXXXX by the Employment Security Department.
"(2) The Employment Security Department is a state agency established to administer the Employment Security Act of the State of Washington; that Otto S. Johnson is its duly Acting Commissioner and as such is a state officer.
"(3) By chapter 50, Laws of 1947, and amendments (Chapter 50.28, RCW), the legislature of the State of Washington directed the Department of Employment Security to compute the surplus in the Unemployment Compensation Fund according to a statutory formula and to credit to each qualified employer his portion of such surplus. Since 1947 experience rating credits have been issued in the following amounts:

 1947 .............. $11,512,293 1953 ............... $16,357,042
 1948 .............. 9,310,945 1954 ............... 7,945,396
 1949 .............. 0 1955 ............... 13,431,190
 1950 .............. 0 1956 ............... 6,932,355
 1951 .............. 14,486,558 1957 ............... 12,049,485
 1952 .............. 16,143,031 1958 ............... 0

"(4) After the department determined on June 30, 1957 that there existed a surplus of $12,049,485, it issued experience rating credits according to statutory formula to 45,937 qualified employers as of said date for application against contributions payable on wages paid in credit year July 1, 1957 to June 30, 1958, and reported not later than July 31, 1958.
"(5) There remained on June 30, 1959, $249,063.41 of the experience rating credits issued on June 30, 1957, which had not been claimed and used by employers against contributions which were payable on *409 any wages paid by them in credit year July 1, 1957 to June 30, 1958 and reported not later than July 31, 1958, being the date prescribed by the Commissioner for payment of contributions on wages paid in last quarter of the credit year ending June 30, 1958.
"(6) In computing surplus on June 30, 1959 for credit year July 1, 1959 to June 30, 1960, the department made the following computation of the amount of monies in the Unemployment Compensation Fund:

Balance in UC Fund  June 30, 1959. $197,083,858.35
Less:
Appropriated `Reed Bill' Funds ....... 2,187,491.76
 _______________
Net Balance UC Fund  June 30, 1959. $194,896,366.59
Deductions:
A. 1957-1958 E.R.C. ... $ 249,063.41
 1958-1959 E.R.C. ... none
 ______________
 Total Unliquidated
 E.R.C. ........... $ 249,063.41
B. Total Contributions
 Paid Applicable to
 Calendar Year 1958,
 as of March 31, 1959 $47,505,737.30
 Statutory formula
 requirement ........ x4
 _______________
 $190,022,949.20
 _______________
 Total Deductions from UC Net Balance ................ $190,272,012.61
 _______________
 Surplus available under Statutory Formula ........... $ 4,624,353.98
To be distributable, surplus
must be 10% of contributions
paid applicable to calendar year
1958, as of March 31, 1959.
 10% of $47,505,737.30 (above) ........... $4,750,573.73
 Surplus (above) ......................... 4,624,353.98
 ______________
 Additional money needed in surplus to issue
 experience rating credits ................. $ 126,219.75

"(7) That a study by the department of the source of unliquidated experience rating credits deducted under A in Par. VI shows the following as of September 30, 1959:

Category No. of Accounts Amounts
(1) Employer liquidation .................... 91 $ 9,556.37
(2) Employer bankruptcy ..................... 101 8,423.28
(3) Discontinuance of business by employer .. 2252 130,444.36
(4) Reduction of payroll .................... 922 97,168.00
 ____ ___________
 3366 $245,592.01
*410 Items involving less than $5.00 in credits
eliminated from study ....................... $ 3,246.11

"(8) That if deduction A in Par. VI was not made, surplus would be $4,873,417.39 and experience rating credits for credit year July 1, 1959 to June 30, 1960, would be issued in that amount to approximately 50,000 qualified employers in the State of Washington to be applied against contributions payable on wages for such period and reported not later than July 31, 1960."
The relator states that the question involved is:
"In computing `surplus' in the unemployment compensation fund on June 30, 1959, should the Acting Commissioner subtract, as `outstanding as valid', certain experience rating credits which the law provides can only be applied in payment of contributions payable on wages paid in year July 1, 1957 to June 30, 1958 and reported not later than July 31, 1958?"
The respondent contends that, under the facts of this case, mandamus does not lie. We agree.
RCW 50.28.060 provides in part:
"Any employer dissatisfied with the amount of credit shown on his credit notice ... may file a request for adjustment with the commissioner within thirty days of the mailing of such credit notice to the employer, ... Should such request for adjustment be denied the employer may ... file with the appeal tribunal a petition for hearing ... The appellate procedure prescribed by this title for further appeal shall apply to all denials of adjustment."
RCW 50.32.180 provides:
"The remedies provided in this title for determining the justness or correctness of assessments, refunds, adjustments, or claims shall be exclusive and no court shall entertain any action to enjoin an assessment or require a refund or adjustment except in accordance with the provisions of this title. Matters which may be determined by the procedures set out in this title shall not be the subject of any declaratory judgment."
The legislature has provided in the employment security act an appeal procedure to the commissioner, to an appeal board, and, thereafter, to the courts. RCW 50.32.
[1, 2] Mandamus is an extraordinary proceeding. A writ will issue only when there is no plain, speedy or adequate remedy at law. Edwards v. Tremper, 49 Wn. (2d) 677, 305 *411 P. (2d) 1062 (1957). When an adequate administrative remedy is provided, it must be exhausted before the courts will intervene. Sunny Brook Farms v. Omdahl, 42 Wn. (2d) 788, 259 P. (2d) 383 (1953). See Mulhausen v. Bates, 9 Wn. (2d) 264, 114 P. (2d) 995 (1941); Louis Eckert Brewing Co. v. Unemployment Reserves Comm., 47 Cal. App. (2d) 844, 119 P. (2d) 227 (1941).
[3] In the instant case, the agreed facts do not establish that the administrative remedy was inadequate. The relator did not pursue its administrative remedies. Applying the established law to the instant proceeding, a writ of mandate cannot issue.
Relator contends that, because the respondent has not issued a formal order announcing his finding that the surplus was insufficient to allow experience rating credits, there was no order from which it could appeal, and that, therefore, relief by mandamus is the only remedy available.
[4] We find no merit in this contention. The relator received a letter from the acting commissioner in which it was apprised of the commissioner's determination that the surplus was insufficient to warrant the allowance of rating credits. The letter was not a formal order. It was, however, sufficient evidence of the commissioner's intention to deny rating credits for the relator to test the "justness or correctness" of the determination through the use of the statutory administrative remedies. See New Model Laundry v. Employment Security Department, 35 Wn. (2d) 598, 214 P. (2d) 209 (1950). The legislature has provided that the administrative remedies established under the act are exclusive. RCW 50.32.180, supra.
[5] Finally, should the relator elect to pursue its administrative remedies, the thirty-day time limitation set out in RCW 50.28.060, supra, is not a bar to a request for an adjustment, for the reason that the time limitation prescribed in the quoted section starts to run from the date a formal rating credit notice is given, when rating credits are authorized.
For the reasons stated, the writ is denied.
NOTES
[1] Reported in 353 P. (2d) 881.