[No. 40150.    Department Two.    June 26, 1969.]

THE STATE OF WASHINGTON, *on the Relation of* JOHN C. BEAM, *Respondent,* v. F. SYLVIN FULWILER *et al., Petitioners.*\*

*Norman dePender* and *Philip H. Irwin,* for petitioners.

*Cashatt, Williams, Connelly & Rekofke* and *Joseph J. Rekofke,* for respondent.

HAMILTON, J.—We granted petitioners' application for a writ of certiorari for the purpose of reviewing the Spokane County Superior Court's action in granting respondent's application for a writ of certiorari directed to petitioners, in setting a hearing on respondent's application for a writ of mandamus, and in granting a restraining order prohibiting petitioners from proceeding to hear respondent's appeal from his discharge as a city employee.

The respondent was the chief examiner of the Civil Service Commission of the City of Spokane from July 1, 1942, until November 24, 1967, when he was discharged by order of the city manager, petitioner Fulwiler. The other petitioners are the City of Spokane, and the Civil Service Commis-

*Reported in 456 P.2d 322.

sion of the City of Spokane in the persons of four of its members, Arthur M. Hansen, William J. May, James E. Borg, and Jerome C. Kopet.

We summarize the significant facts. The position of chief examiner of the civil service commission is specifically created by the Spokane city charter and is expressly covered by civil service. The charter further provides that no civil service employee may be discharged except for cause, and guarantees a right of appeal from an administrator's discharge.

In mid-1967 a concerted effort was initiated by the civil service commission (a board of five members) to dispense with respondent's services. Respondent was asked by the commission to retire, and when he refused he was requested to resign and transfer to a lesser position. Again he refused. Thereafter the commission met in executive session, relieved respondent of his duties, and recommended passage of a city ordinance reducing his pay scale. The city council passed the ordinance, following which the commission created a new position superior to respondent's position and filled it with another person. The respondent then applied to the superior court for writs of mandamus and prohibition, seeking to have his duties restored and the action of the commission in establishing the new position set aside. After a hearing, the superior court granted the relief prayed for and restored respondent to his office.

No appeal was taken from the superior court's action. Instead, the commission members undertook an investigation into respondent's conduct in office, after which they unanimously adopted a resolution recommending that the city manager discharge him. This was followed by a letter addressed to the city manager, personally signed by four members of the civil service commission—petitioners Hansen, May, Borg, and Kopet—requesting the city manager to discharge respondent for cause. This letter detailed the charges which the signators believed warranted the recommended action. Pursuant to the recommendation and request, the city manager notified respondent of his discharge.

The respondent timely notified the commission that he intended to appeal his discharge, and requested in his notice that the commission disqualify itself as the appellate tribunal and allow the appeal to be heard by the superior court. He predicated this request upon his belief that the commission, under the circumstances prevailing, could not provide him with a fair hearing. The commission declined to disqualify itself, and set a date for the hearing. Respondent then applied to the superior court for writs of certiorari and mandamus seeking judicial review of the order of the city manager discharging him. The superior court, after a hearing, issued a writ of certiorari directed to petitioners, and set a date for a hearing on the merits of the applications for the writs. In doing so, the court determined that the civil service commission had disqualified itself from hearing respondent's appeal, and, by the terms of the order, restrained the commission from taking any further action upon respondent's case.

The petitioners then applied to this court for a writ of certiorari, which was granted, alleging that the superior court lacked jurisdiction to review respondent's dismissal.

We cannot agree with petitioners' allegations.

It is clear from the recited background facts that four of the five members of the civil service commission which, by virtue of charter provisions constitute the appellate tribunal before which respondent's appeal would normally be heard, personally investigated respondent's administration of his office, formed their conclusions, promulgated the charges against him, transmitted these accusations over their signatures to the city manager, and recommended his discharge. Inescapably the commission members became the investigators, the accusers, the prosecutors, mayhaps the witnesses, and if allowed to sit as an appellate tribunal, the judges upon the merits of the charges. Despite the integrity of the respective members of the commission, and their undoubted desire to be objective in their appellate disposition of the matter, it is highly unlikely, under the unusual circumstances prevailing, that the respondent or anyone in a like situation could approach or leave a hearing

presided over·by a tribunal so composed ·with any· feeling that fairness and impartiality inhered in the procedure.

■ The provisions of the Spokane. city charter and the rules adopted by the Spokane Civil .Service Commission, concerning suspension or discharge of civil service employees, provide that respondent is .entitled to a hearing upon the charges giving rise. to his discharge. Implicit. in such provisions is that such a hearing shall be fair and impartial, and before an unbiased tribunal. Such protections are inherent in· the word "hearing" and without them hearing procedures could be seriously infected. *See Interstate Commerce Comm'n v. Louisville & Nashville R.R.*, 227 U.S. 88, 57 L. Ed. 431, 33 S. Ct. 185 (1913). These protections, and the concepts of fundamental fairness they project, are inherent. in the notions of "administrative due process" and have been recognized by this court . as late as *Smith v. Skagit County*, 75 Wn.2d 715, 453 P.2d 832 (1969). In fact, as early in the history of this court as 1898, we acknowledged that

> The principle of impartiality, disinterestedness, and fairness on the part of the judge is as old as the history of courts; in fact, the administration of justice through the mediation of courts is based upon this principle. It is a fundamental idea, running through and pervading the whole system of judicature, and it is the popular acknowledgment of the inviolability of this principle which gives credit, or ·even toleration,. to decrees of judicial tribunals. Actions of courts which disregard. this safeguard to litigants would more appropriately be termed the administration of injustice, and their proceedings would be· as shocking to our private sense of justice as they would be injurious to the public interest. The learned and observant Lord Bacon well said that the virtue of a judge is seen in making inequality· equal, that he may plant his judgment ·as upon even ground. Caesar demanded that his wife should not only be virtuous, but beyond suspicion; and the state should not be any less exacting with its judicial officers, in whose keeping are placed not only the financial interests, but the honor, the ·liberty and the lives of its citizens, and it should see to it that the scales in which the rights· of ·the citizen are· weighed should be nicely balanced, for, as was well said

by Judge Bronson in *People v. Suffolk Common Pleas,* 18 Wend. 550:

"Next in importance to the duty of rendering a righteous judgment, is that of doing it in such a manner as will beget no suspicion of the fairness and integrity of the judge."

*State ex rel. Barnard v. Board of Education of Seattle,* 19 Wash. 8, 17, 52 P. 317 (1898).

In the case just cited, this court was considering a challenge to the qualification of a school director to sit on a panel of school directors charged with the duty of determining the validity of a complaint against a school superintendent. We sustained the challenge predicated upon the reasoning above quoted.

And in *State ex rel. Caffrey v. Superior Court,* 72 Wash. 444, 130 P. 747 (1913), a case involving the discharge of a school teacher by the board of directors and the teacher's right of appeal from that discharge, we held that where the appeal lay to the county superintendent who had caused the teacher's discharge the necessary disqualification of the county superintendent vested the superior court with jurisdiction to hear the matter on the merits. In addressing ourselves to the question, we stated, at 447:

[B]ut in this case it is alleged that the county superintendent dominated the school board and took an active interest in the controversy, and without giving the plaintiff an opportunity to be heard or to know the charges against her, and without any record of the proceedings being made, demanded her resignation and threatened her with discharge and to cancel her certificate authorizing her to teach in the state, unless she resigned. She demanded that she be informed of the charges against her and the right to be heard. These demands were denied, and she was discharged without cause. *To say that she must now appeal to the officer who dominated these proceedings and made, or at least directed, the order, is to say that the county superintendent may be the accuser and the judge in the same controversy.* . . .

. . .

The allegations in the complaint were sufficient to show that the county superintendent was utterly disqual-

ified to hear an appeal in this case, *and since there is no provision for any other person to hear it, the plaintiff is without remedy except in the courts. The superior court, therefore, had jurisdiction to review the order of the board of directors, and determine whether the order was made with or without cause.*

(Italics ours.)

■ We find no distinction, in principle, between the two cases just referred to and the instant case. Both give rise to the disqualification of a tribunal where, as here, it is made to appear that the hearing tribunal is composed of an individual or individuals who investigated, accused, prosecuted and would judge the controversy involved. And where, as here, there is no provision for another tribunal to hear the matter, the *Caffrey* case stands for the proposition that the superior court is possessed of inherent jurisdiction to hear and determine the controversy on the merits.

The order of the superior court granting the writ of certiorari and restraining the civil service commission from holding a hearing in respondent's case is affirmed.

HUNTER, C. J., HILL and FINLEY, JJ., concur.

NEILL, J. (dissenting)—My disagreement with the majority opinion is not so much in result as it is in a philosophy of the proper role of the judiciary in review of administrative procedures. I can and do subscribe to much that the majority states as to separation of the function of prosecutor and adjudicator, but should courts prejudge a bias or prejudice of an administrative tribunal?

This case presents two questions for our consideration: (1) whether respondent, in the trial court, has alleged facts which would constitute grounds for the disqualification of one or more members of the Spokane Civil Service Commission from hearing respondent's appeal; and (2) whether these grounds may be urged upon the court in a petition for writ of certiorari and mandamus prior to the final administrative determination of respondent's appeal.

It is a well known maxim of Anglo-American law that "no man shall be a judge in his own cause." This was

recognized by this court long ago in *State ex rel. Barnard v. Board of Education of Seattle,* 19 Wash. 8, 17, 52 P. 317 (1898):

> The principle of impartiality, disinterestedness, and fairness on the part of the judge is as old as the history of courts; in fact, the administration of justice through the mediation of courts is based upon this principle. It is a fundamental idea, running through and pervading the whole system of judicature, and it is the popular acknowledgment of the inviolability of this principle which gives credit, or even toleration, to decrees of judicial tribunals.

This principle has motivated extensive criticism of the common situation in administrative agencies where the same administrative body, or the same administrator, serves as investigator, prosecutor, and judge in the same controversy.

> "Furthermore, the same men are obliged to serve both as prosecutors and as judges. This not only undermines judicial fairness; it weakens public confidence in that fairness. Commission decisions affecting private rights and conduct lie under the suspicion of being rationalizations of the preliminary findings which the commission, in the role of prosecutor, presented to itself." Administrative Management in the Government of the United States, Report of the President's Committee on Administrative Management, 36-37 (1937).

*Wong Yang Sung v. McGrath,* 339 U. S. 33, 42, 94 L. Ed 616, 70 S. Ct. 445 (1950).

Acting in response to these criticisms, Congress restricted the combination of prosecutorial and quasi-judicial functions in administrative agencies in the federal Administrative Procedure Act, 5 U.S.C. § 554(d) (1966). Our legislature has recently followed suit in RCW 34.04.115 (1967). However, combinations of these functions still remain a frequent problem in cases such as the one before us in which the agency is not subject to either the federal or state act.

The United States Supreme Court has met similar problems in cases involving deportation under the immigration

laws, where members of the same agency and occasionally the same officer act in both investigative and judicial capacities. In *Wong Yang Sung v. McGrath, supra,* the court held that proceedings under the Immigration Act, 39 Stat. 874 (1917) (now the Immigration and Nationality Act, 66 Stat. 163 (1952)), were subject to the Administrative Procedure Act, and thus that separation of functions was required in deportation proceedings. The court intimated that to otherwise construe the Immigration Act might bring it into constitutional jeopardy, suggesting that a combination of investigative and judicial functions may violate the due process clause, U.S. Const. amend. 5. Congress, however, legislatively reversed the Supreme Court and exempted deportation proceedings from the separation functions requirements. Supplemental Appropriation Act, 64 Stat. 1044, 1048 (1950). (The Immigration Act was later amended to provide for combinations of functions that would have violated the Administrative Procedure Act, had it been applicable. 66 Stat. 163, 209 (1952)). *See* 2 Davis, Administrative Law § 13.02 (1958).

The court then faced the contention that supervision of a "special inquiry officer" in deportation proceedings by officials charged with investigative and prosecuting functions was violative of due process. This contention was rejected, the court referring to "the long-standing practice in deportation proceedings." *Marcello v. Bonds,* 349 U.S. 302, 99 L. Ed. 1107, 75 S. Ct. 757 (1955).

In three cases involving judges exercising the contempt power, the court has been disturbed by the due process objection. In *In re Murchison,* 349 U.S. 133, 99 L. Ed. 942, 75 S. Ct. 623 (1955), the court held that due process was violated when a judge serving as a "one-man grand jury" under Michigan law charged the defendant with criminal contempt for his answers given in the secret grand jury hearings, and then later presided at the separate trial for contempt. The court commented at 136:

A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law

has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that "every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law."

In two other cases involving somewhat similar fact patterns, however, the court has rejected the due process argument. *Nilva v. United States,* 352 U.S. 385, 1 L. Ed. 2d 415, 77 S. Ct. 431 (1957); *Sacher v. United States,* 343 U.S. 1, 96 L. Ed. 717, 72 S. Ct. 451 (1952).

The lower federal courts and state courts have usually rejected contentions that combinations of prosecutorial and judicial functions violate the due process clause, 2 Davis, Administrative Law § 13.02 (1958), and cases cited therein. *But see In re Schlesinger,* 404 Pa. 584, 172 A.2d 835 (1961); *State ex rel. Ellis v. Kelly,* 145 W. Va. 70, 112 S.E.2d 641 (1960), where other defects coupled with this combination of functions brought a contrary result.

It is established by our prior decisions that the right to government office or employment is not a vested property right protected by due process. *Yantsin v. Aberdeen,* 54 Wn.2d 787, 345 P.2d 178 (1959). It is equally well established, however, that

The rights of civil service employees pertaining to their removal, suspension, or demotion include, at least, that the procedure, prerequisites, and conditions set forth in the governing statute, charter, or ordinance be followed.

*Reynolds v. Kirkland Police Comm'n,* 62 Wn.2d 720, 724, 384 P.2d 819 (1963).

The rules adopted by the Spokane Civil Service Commission provide that respondent is entitled to a hearing, with provisions for notice, representation, confrontation and cross-examination of witnesses. Implicit in such provisions

is that these hearings shall be fair and impartial, and before an unbiased tribunal. Such protections are inherent in the word "hearing" and, without them, any proceedings would be reduced to a meaningless sham. *See Interstate Commerce Comm'n v. Louisville & Nashville R.R.,* 227 U.S. 88, 57 L. Ed. 431, 33 S. Ct. 185 (1913); *Johnson v. Village of Cohasset,* 263 Minn. 425, 116 N.W.2d 692 (1962). These protections have been affirmed by this court in our requirement that commission hearings be held in good faith, *Eckman v. Board of King County Civil Serv. Comm'rs,* 66 Wn.2d 927, 404 P.2d 785 (1965), and are inherent in the notions of "administrative due process" and the review of administrative proceedings for arbitrary and capricious actions. *See State ex rel. Perry v. Seattle,* 69 Wn.2d 816, 420 P.2d 704 (1966). The concepts of fairness which are so critical in actions based upon due process, then, are also very relevant when considering the common law rules providing for disqualification of administrative officials exercising quasijudicial functions in areas not protected by the due process clause. *See State ex rel. Barnard v. Board of Education, supra.*

Respondent in the trial court has sought judicial review upon the grounds that the entire Civil Service Commission is disqualified from hearing his appeal. A review of the record shows that respondent has urged two bases for this contention: (1) that all commission members participated in formulating the charges against him; and (2) that the commission has publicly announced its conclusion, reached after investigation, that respondent was inefficient and incompetent in the management of his office.

In the absence of aggravated circumstances, the mere combination of prosecuting and adjudicating functions is not grounds for disqualification of an administrative hearing officer. *Mackler v. Board of Education of Camden,* 16 N.J. 362, 108 A.2d 854 (1954); *Hawkins v. Common Council of Grand Rapids,* 192 Mich. 276, 158 N.W. 953 (1916). *See* 1 Cooper, State Administrative Law 340 (1965); 1 Am. Jur. 2d § 64, p. 861 (1962). The combination of these functions in one person or group of people, however, is so

conducive to a lack of impartiality that it may be grounds for disqualification when combined with any other evidence of bias. *See State ex rel. Ball v. McPhee,* 6 Wis. 2d 190, 94 N.W.2d 711 (1959). For instance, a member of an administrative adjudicatory commission who actively participates in the investigation as well as prosecution of the case may be disqualified from performing a quasi-judicial function. *See Amos Treat & Co. v. Securities & Exch. Comm'n,* 306 F.2d 260 (D.C. Cir. 1962); *State ex rel. Ellis v. Kelly, supra; but see, Texas State Bd. of Dental Examiners v. Fieldsmith,* 386 S.W.2d 305 (Tex. Civ. App. 1965). Where one causes the investigation to be made, performs prosecutorial and judicial functions, and has a pecuniary interest in the outcome may likewise be disqualified. *New Jersey State Bd. of Optometrists v. Nemitz,* 21 N.J. Super., 18, 90 A.2d 740 (1952). One who contributes financially to a private prosecution and investigation may also be disqualified from adjudicating in an administrative hearing of the case. *State ex rel. Miller v. Aldridge,* 212 Ala. 660, 103 So. 835, 39 A.L.R. 1470 (1925). Finally, it is clear that one who prejudges a case and announces his decision in advance of the hearing is disqualified from judging at that hearing. *State ex rel. Barnard v. Board of Education, supra; State ex rel. Caffrey v. Superior Court,* 72 Wash. 444, 130 P. 747 (1913).

Respondent seeks to bring this case within the latter rule by contending that the members of the civil service commission had, in fact, prejudged his case, and had publicly announced their conclusion that respondent was inefficient and incompetent. The superior court evidently agreed, because the writ of certiorari issued by that court contained a finding that the commission members were disqualified.

Any review of the qualifications of the commission members at this point is severely hampered by the stage at which these proceedings were brought. Here the combination of prosecuting and adjudicatory functions is clear, but as stated, in absence of controlling legislation, that alone will not constitute grounds for disqualification. Respondent has alleged some form of public prejudgment, but it does not appear that any, or all, of the five commissioners have

announced their decision on the appeal in advance. The fact that four of the commissioners recommended respondent's discharge does not necessarily preclude their impartiality at the appeal hearing where respondent will have the opportunity to present evidence on his behalf. A judgment at this stage that the commissioners are disqualified upon the record now before us necessarily involves a prediction that the commissioners will let bias influence their decision at a hearing which has not been held yet.

The doctrine of exhaustion of administrative remedies was formulated to absolve the courts of this difficult task. This court has consistently held that when an adequate administrative remedy is provided by statute, it must be exhausted before the courts will intervene. *State ex rel. Association of Wash. Indus. v. Johnson,* 56 Wn.2d 407, 353 P.2d 881 (1960); *Sunny Brook Farms v. Omdahl,* 42 Wn.2d 788, 259 P.2d 383 (1953). This requirement, of course, applies regardless of the type of court intervention sought, including petitions for writs of certiorari and mandamus. Up to this point I have discussed the grounds for disqualification of an administrative adjudicatory official. The precise question presented here, however, is which, if any, of these grounds may respondent urge upon the courts prior to exhausting his remedy provided by the Spokane city charter.

Respondent urges that any appeal to the commission under the circumstances of this case would be futile. There is an exception to the doctrine of exhaustion of administrative remedies, which will excuse necessity of pursuing a futile administrative appeal—based upon the maxim that equity does not require the doing of a useless thing. *See Koepke v. Fontecchio,* 177 F.2d 125 (9th Cir. 1949). It can also be contended that if the commissioners are disqualified then there is no valid administrative board to hear the appeal and thus no remedy to exhaust. *See* Jaffe, Judicial Control of Administrative Action 440 (1965). Either of these considerations might be controlling in an extreme case such as *State ex rel. Caffrey v. Superior Court, supra,* where we held that it was not necessary to pursue an

appeal to a county superintendent of schools who had already prejudged the case. But, in a case such as this, where the fact of prejudgment by all five commission members is not clear and flagrant as in *Caffrey*, care must be exercised to insure that the exception does not destroy the rule.

Generally, claims of disqualification based upon bias, personal prejudice or the attitudes of administrative hearing officers should not be heard by the courts until available administrative remedies are exhausted. *Securities & Exch. Comm'n v. R. A. Holman & Co.*, 323 F.2d 284 (D.C. Cir. 1963); *Abelleira v. District Court of Appeal*, 17 Cal. 2d 280, 109 P.2d 942, 132 A.L.R. 715 (1941). Where a claim of disqualification depends upon the decision of factual issues, or at least where the uncontested allegations presented by the claim do not clearly bring it within one of the grounds for disqualification mentioned above, we should not attempt to predict a lack of impartiality in an administrative hearing yet to be heard. As was stated in *Abelleira v. District Court of Appeal, supra,* at 301:

> The whole argument rests upon an illogical and impractical basis, since it permits the party applying to the court to assert without any conclusive proof, and without any possibility of successful challenge, the outcome of an appeal which the administrative body has not even been permitted to decide. This argument, though successful in a few cases, has been rejected by the weight of authority.

To hold otherwise would "open a ready and easily abused route to delay" (Jaffe, *supra*, at 441) and "could lead to a breakdown in the administrative process which has long been criticized for its slow pace." *Securities & Exch. Comm'n v. R. A. Holman & Co., supra.*

I therefore feel that respondent commenced his action prematurely. I would direct a dismissal of respondent's action and dissolve the order restraining the Spokane Civil Service Commission from taking further action regarding respondent's dismissal. The respondent may later seek judicial review of whatever action the commission takes after pursuing his administrative appeal.

Respondent contends that once his appeal is heard he will, in effect, be denied adequate legal redress for bias inherent in the hearing due to the limited court review of administrative hearings. Judicial review of administrative functions which are essentially administrative (*i.e.,* not a function courts were historically accustomed to perform) is limited to a consideration of whether the agency acted arbitrarily, capriciously, or contrary to law. *In re Harmon,* 52 Wn.2d 118, 323 P.2d 653 (1958). Our review under this standard is quite limited and if there is evidence to support a commission's conclusion, it will be upheld. *State ex rel. Perry v. Seattle,* 69 Wn.2d 816, 420 P.2d 704 (1966). Furthermore, the burden of proving arbitrary and capricious action is on the party alleging it. *State ex rel. Myhre v. Spokane,* 70 Wn.2d 207, 422 P.2d 790 (1967).

However, when there is a combination of functions with the same party or parties both prosecuting and hearing the case, and when the issue presented concerns the prejudice or bias of the hearing officers rather than simply the correctness of their decision, then many courts have expanded their scope of review. The following statements are representative of the courts which have followed this course:

> The anomaly in procedure which permits the board of education, an administrative body, to serve in the triple capacity of complainant, prosecutor, and judge makes it vitally necessary that in reviewing administrative decisions courts zealously examine the record with the view to protecting the fundamental rights of the parties, lest the rule against arbitrariness and oppressiveness become a mere shibboleth.

*State ex rel. Steele v. Board of Education of Fairfield,* 252 Ala. 254, 261, 40 So.2d 689 (1949).

> This anomaly in procedure makes it vitally necessary that in reviewing administrative decisions courts zealously examine the record . . .

*State ex rel. Ging v. Board of Education of Duluth,* 213 Minn. 550, 565, 7 N.W.2d 544 (1942).

> [W]here the investigation, prosecution and judicial functions repose in the same board, its members must be zealous in the recognition and preservation of the right to

hearing by impartial triers of the facts and the courts must impose a most careful supervision of that element of the hearing.

*New Jersey State Bd. of Optometrists v. Nemitz,* 21 N.J. Super. 18, 37, 90 A.2d 740 (1952).

[S]uch claims as the appellee has here presented should be adduced in the first instance at the administrative level and any challenge to the resolution of these issues is subject to judicial review when the administrative record reaches us in due course. . . . [A]t that stage we will scrutinize the issue of disqualification with great care. . . . While the scope and nature of that inquiry has never been fully delineated it must be sufficient to allow the challenging party to introduce whatever relevant evidence he possesses bearing on disqualification . . .

*Securities & Exch. Comm'n v. R. A. Holman & Co.,* 323 F.2d 284, 287 (D.C. Cir. 1963), *See also,* 2 Davis, Administrative Law 181 (1958).

The possibilities of unfairness inherent in a system providing that the same persons shall be both prosecutors and judges are so great that, in order to secure the fair hearing provided for by the Spokane city charter and in order to prevent judicial review for arbitrary and capricious action from becoming a mere formality, the courts should carefully scrutinize the record of such hearings to insure their impartiality. This is not to say that the superior court will substitute its judgment for that of the commission, but rather that it will examine the record to insure that the decision was not the product of bias. To this end the challenging party must be permitted in superior court to introduce any evidence relevant to the issue of disqualification. This expanded scope of review is applicable only to administrative hearings in which there is a combination of investigative or prosecuting functions with the adjudicative function, and does not otherwise affect our holdings on the scope of review for arbitrary and capricious actions. In this manner the courts, with the benefit of a complete record and without the necessity of second guessing administrative tribunals, should be able to guarantee fairness to individu-

als which is threatened by this objectionable administrative feature without unduly hampering the administrative process.