[No. 39901-2-I.    Division One.    March 23, 1998.]

VERNON D. CLAUSING, D.O., *Appellant*, v. THE STATE OF
WASHINGTON, ET AL., *Respondents*.

*John D. Blankinship* of *Montgomery, Purdue, Blankinship & Austin, P.L.L.C.*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Linda M. Moran, Assistant*, for respondents.

WEBSTER, J. — ▮ The Washington State Board of Osteopathic Medicine and Surgery ("Board") revoked Dr. Vernon D. Clausing's medical license and fined him $25,000. In part, the Board found Dr. Clausing committed unprofessional conduct under RCW 18.130.180 because he negligently prescribed legend drugs for other than legitimate or therapeutic purposes. Dr. Clausing appealed to the superior court, which affirmed the Board's decision. He makes these arguments on appeal: (1) the Board did not have statutory authority to take official action by telephone conference call; (2) he was denied due process because the same board members deciding his summary suspension order also ruled on the final order, constituting prejudgment and violating

the appearance of fairness doctrine; and (3) the Board's decision was not based upon substantial evidence.[1]

We affirm. Although no statute addresses proper procedure during Board deliberations, both the Administrative Procedure Act (APA) and the Uniform Disciplinary Act (UDA) permit agency adjudicative proceedings to be conducted by telephone conference call at the presiding officer's discretion. To harmonize the statutes and avoid placing unwritten restrictions on Board discretion, we find that the agency acted within its discretion when it convened and acted on Dr. Clausing's license by telephone conference call. Neither do we find Dr. Clausing's due process rights violated due to prejudgment or an appearance of unfairness. Merely ruling on summary suspension and then participating in a disciplinary hearing, without more, does not violate due process or the appearance of fairness doctrine. Finally, because the Board acted within its discretion in making its evidentiary rulings, substantial evidence supports the final order.

## FACTS

Dr. Vernon D. Clausing operated an osteopathic medical clinic in Burien. In January 1995, a prosecuting Assistant Attorney General (AAG), the Department of Health's prosecutor for the State Board of Osteopathic Medicine and Surgery, moved the Board to summarily suspend Dr. Clausing's license. This motion was supported by witness decla-

---

[1]We note, however, that Dr. Clausing's brief likely violated RAP 10.3(h), which provides:

> In addition to the assignments of error required by rule 10.3(a)(3) and 10.3(g), the brief of an appellant . . . who is challenging an administrative adjudicative order under RCW 34.05 . . . shall set forth a separate concise statement of each error which a party contends was made by the agency issuing the order, together with the issues pertaining to each assignment of error.

See also *Macey v. Employment Sec. Dep't*, 110 Wn.2d 308, 311, 752 P.2d 372 (1988) (failure to provide challenged finding of fact verbatim violates RAP 10.4(c)). Although this inadequate briefing may justify dismissing the appeal, *id.*, we consider his arguments because they can be ascertained from his brief.

rations and exhibits and a statement of charges claiming Dr. Clausing was improperly distributing legend drugs in excessive amounts, strength, frequency, and/or duration under the Uniform Disciplinary Act, RCW 18.130.180.

The Board responded to this motion on January 25 when it convened by telephone conference call and issued Findings of Fact, Conclusions of Law, and Order of Summary Restriction, securing Board chair John Kostecka's signature by facsimile. Specifically, the Board concluded that if the evidence presented by the AAG were proved at hearing, it demonstrated misconduct and imminent danger of harm to Dr. Clausing's patients and the general public.[2] Dr. Clausing denied the charges and requested a prompt hearing.

The Board held two prehearing conferences from which two prehearing orders were issued. These orders outlined pleading amendments, discovery issues, proposed witnesses, and proper handling of Dr. Clausing's original prescriptions during the hearing.

The hearing began on February 13, 1995, with Judge Schmidt presiding over the Board's four member panel, which included three osteopathic physicians and one member of the public. Before presenting its case in chief, the Department of Health moved to dismiss charges that alleged Dr. Clausing overprescribed to 101 patients. Dr. Clausing objected because he claimed this was a tactic to prevent him from calling these patients as witnesses. Al-

---

[2] The Department of Health's administrative procedures for emergency adjudicative proceedings requires that:

(1) Summary action may be taken only after a review . . . of such evidence, including affidavits, if appropriate, to establish:

(a) The existence of an immediate danger to the public health, safety, or welfare;

(b) The department's ability to address the danger through a summary action; and

(c) The summary action is necessary to address the danger . . . .

WAC 246-10-301(1).

though Judge Schmidt permitted the charges to be withdrawn, he offered Dr. Clausing a continuance and allowed him to call the remaining 25 patients, but Dr. Clausing declined this offer.

During the Department's case in chief, much evidence was introduced. Notably, the Board heard from a former patient, the mother and husband of a deceased patient, Dr. William Vilensky, an expert witness who was also a pharmacist and an osteopathic physician, and Robert Mobus, the Pharmacy Board investigator who reviewed Dr. Clausing's prescriptions and pharmacy records. During Mr. Mobus's testimony, original prescriptions were available for inspection, and, if particular prescriptions were entered into evidence, they were photocopied and submitted. Included in the Department's testimony was evidence that Dr. Clausing's prescribing practices for the legend drugs nalbuphine (or Nubain), carisoprodol (or Soma), promethazine (or Phenegran), stadol, phrenalin, and butalbital (or Fioricet), often exceeded the dosages recommended by the Physician's Deskbook Reference by 1 1/2 to 3 times. The testimony also indicated it was highly unusual for a general practitioner to have so many patients in need of these drugs in such quantities, and that Dr. Clausing both kept inadequate patient history and physical examination records, and disregarded alcoholism and drug interactions.

At the close of the Department's case, Judge Schmidt granted Dr. Clausing's request to continue the case until March 1, 1995. When the hearing resumed, Dr. Clausing called 22 witnesses, mostly former patients, submitted many exhibits, and testified on his own behalf.

After the hearing, the Board panel and Judge Schmidt convened to deliberate and discuss the final order. But in responding to Dr. Clausing's interrogatories,[3] the Board was uncertain whether it also discussed the final order by telephone conference call. The panel chair, Board member

---

[3]These interrogatories are part of the record on review because they were the product of Dr. Clausing's superior court motion to supplement the administrative record through discovery.

John Kostecka, signed the final order and it was entered on April 22, 1995. This order revoked Dr. Clausing's professional license, finding he violated RCW 18.130.180(4), (6) and (8),[4] and fined Dr. Clausing $25,000 ($1,000 for each patient he negligently prescribed legend drugs).

Dr. Clausing filed a timely appeal in King County Superior Court. The court affirmed the Board's decision.

## DISCUSSION

The appellate court reviews agency orders in adjudicative proceedings under the Administrative Procedure Act. *See* RCW 34.05.570(3). Relief must be granted if the order violates the constitution, exceeds statutory authority, is the result of faulty procedure, involves an error in interpreting or applying the law, is not supported by substantial evidence, omits issues requiring resolution, involves improper rulings on disqualification issues, is inconsistent with an agency rule, or is arbitrary or capricious. *See* RCW 34.05.570(3)(a)-(i). Appellate review is confined to the administrative record. *See Franklin County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 324, 646 P.2d 113 (1982). And when reviewing matters within the agency's

---

[4]In pertinent part, RCW 18.130.180 of the Uniform Disciplinary Act includes in its definition of "unprofessional conduct" the following:

(4) Incompetence, negligence, or malpractice which results in injury to a patient or which creates an unreasonable risk that a patient may be harmed. The use of a nontraditional treatment by itself shall not constitute unprofessional conduct, provided that it does not result in injury to a patient or create an unreasonable risk that a patient may be harmed;

. . .

(6) The possession, use, prescription for use, or distribution of controlled substances or legend drugs in any way other than for legitimate or therapeutic purposes, diversion of controlled substances or legend drugs, the violation of any drug law, or prescribing controlled substances for oneself; [and]

. . .

(8) Failure to cooperate with the disciplining authority by:

(a) Not furnishing any papers or documents . . . .

Dr. Clausing does not assign error to the Board's conclusion that he violated RCW 18.130.180(8)(a).

discretion, the appellate court must "limit its function to assuring that the agency has exercised its discretion in accordance with law, and shall not itself undertake to exercise the discretion that the legislature has placed in the agency." RCW 34.05.574(1). The reviewing court must also give due deference to the agency's knowledge and expertise. *See Medical Disciplinary Bd. v. Johnston*, 99 Wn.2d 466, 483, 663 P.2d 457 (1983) (citing *English Bay Enters., Ltd. v. Island County*, 89 Wn.2d 16, 568 P.2d 783 (1977)). But any findings of fact must be supported by substantial evidence, which is "evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premises." *See Olmstead v. Dep't of Health, Med. Section*, 61 Wn. App. 888, 893, 812 P.2d 527 (1991) (quoting *Green Thumb, Inc. v. Tiegs*, 45 Wn. App. 672, 676, 726 P.2d 1024 (1986)).

## I. Telephone Deliberations

██ Established by RCW 18.57.003, the Washington State Board of Osteopathic Medicine and Surgery (Board) acts as a disciplinary authority governing osteopathic medicine and surgery licenses under the Uniform Disciplinary Act. *See* RCW 18.57.011; 18.130.020(1); 18.130.040(b)(vii). Among its grants of power, the UDA gives the Board authority to investigate unprofessional conduct and hold hearings, *see* RCW 18.130.050(2), take emergency action ordering summary suspension of licenses, *see* RCW 18.130.050(7), permit individual Board members to direct investigations, provided they do not later participate in the related hearing, *see* RCW 18.130.050(9), and establish panels of at least three Board members to perform any duty or authority under the UDA. *See* RCW 18.130.050(15).

In addition to the procedures, powers, and duties outlined in the UDA, the Board also has all the powers and duties granted to agencies by RCW 34.05, the Administrative Procedure Act. *See* RCW 18.130.100. And the uniform procedural rules adopted by the Department of Health (Department) also apply to UDA adjudicative proceedings. *See* RCW 18.130.095.

■ Part IV of the APA delineates the requirements for agency adjudicative proceedings. Of the many procedures authorized, the APA expressly permits agency adjudicative action by telephone conference call. *See, e.g.*, RCW 34.05.431(2); RCW 34.05.449(3). The Department's own adjudicative procedures also permit telephone proceedings. *See* WAC 246-10-111(1). And the model rules for boards permit the same. *See* WAC 246-11-100. The UDA itself provides that settlement conferences may be conducted by telephone. *See* RCW 18.130.098.

While the governing statutes are replete with procedures for the hearing process itself, no provisions explicitly describe the proper procedure for Board deliberations once a hearing is concluded. And disciplinary proceedings are not subject to the Open Public Meetings Act's disclosure requirements, suggesting a certain pall of privacy cast upon agency disciplinary deliberations. *See* RCW 42.30.140.

Nonetheless, Dr. Clausing asserts that the Board was not entitled to enter its summary restriction order by telephone conference call.[5] Dr. Clausing asserts that RCW 18.57.003 required the Board to act only after at least a simple majority of its seven members were physically present at a meeting. That portion of the Board's organic act states:

> An affirmative vote of a simple majority of the members present at a meeting or hearing shall be required for the board to take any official action. The board may not take any action without a quorum of the board members present. A simple majority of the board members currently serving constitutes a quorum of the board.

RCW 18.57.003. Dr. Clausing claims that the "present at a meeting" language requires physical presence at a meeting held at a specific place. He proposes this provision is a clearer statement of how the Board must conduct itself in

---

[5]Dr. Clausing also claims that the Board improperly acted upon the final order by conference call. But in the Board's response to Dr. Clausing's interrogatories, it makes clear that at the hearing's conclusion, it conducted at least part of its deliberations in the physical presence of one another.

its deliberations than the UDA, claiming the UDA makes no such provision.

But the UDA does contain a companion provision. It gives the Board the authority "[t]o establish panels consisting of three or more members of the board to perform any duty or authority within the board's jurisdiction under this chapter[.]" RCW 18.130.050(15). And, like the provision Dr. Clausing relies upon, it says nothing about physical presence of the panel members.

Basic rules of statutory construction require that statutes be construed as a whole. *See In re Visitation of Troxel*, 87 Wn. App. 131, 134, 940 P.2d 698 (1997), *review granted*, 133 Wn.2d 1028, 950 P.2d 478 (1998) (quoting *Alderwood Water Dist. v. Pope & Talbot, Inc.*, 62 Wn.2d 319, 321, 382 P.2d 639 (1963)). In particular, a statute's provisions must be considered in relation to each other and, when possible, harmoniously construed, to effect the act's overall purpose and to insure each provision is properly construed. *See City of Seattle ex rel. Dep't of Hous. & Human Servs. v. State*, 87 Wn. App. 715, 718, 943 P.2d 337 (1997) (citing *Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc.*, 125 Wn.2d 305, 315, 317, 884 P.2d 920 (1994)).

Clausing's construction puts RCW 18.57.003 in conflict with another of its provisions, RCW 18.57.011, which applies the UDA when the Board acts as a disciplining authority. Since the plain language of RCW 18.57.011 says that "[t]he uniform disciplinary act, chapter 18.130 RCW, *governs* . . . the discipline of licensees under this chapter," RCW 18.57.011 (emphasis added), we find the UDA's provisions control. This approach further harmonizes the statute because the UDA's provisions apply specifically to adjudicative proceedings, whereas the organic act provisions also speak to the Board's rule-making and other non-adjudicative functions. *See* RCW 18.57.005.

Consequently, without any showing that the Board members abused their discretion, and considering our obligation to presume agency adjudicators act properly, *see Medical Disciplinary Bd. v. Johnston*, 99 Wn.2d 466,

479, 663 P.2d 457 (1983) (citing *City of Hoquiam v. PERC*, 97 Wn.2d 481, 646 P.2d 129 (1982); *Rosso v. Personnel Bd.*, 68 Wn.2d 16, 20, 411 P.2d 138 (1966)), we conclude that the Board acted within its statutory authority in issuing its summary restriction order after convening by telephone conference call.[6]

## II. Due Process

An administrative proceeding to revoke a professional license is "quasi-criminal" and, therefore, entitled to due process protections. *See Johnston*, at 474 (citing *In re Ruffalo*, 390 U.S. 544, 551, 88 S. Ct. 1222, 1226, 20 L. Ed. 2d 117 (1968); *In re Revocation of License of Kindschi*, 52 Wn.2d 8, 11-12, 319 P.2d 824 (1958)). The "appearance of fairness doctrine" provides additional protection because it requires that the agency not only act fairly but must also do so with the appearance of fairness. *See Smith v. Mount*, 45 Wn. App. 623, 626, 726 P.2d 474 (1986) (citing *Harris v. Hornbaker*, 98 Wn.2d 650, 658 P.2d 1219 (1983)). But merely combining investigative and adjudicative functions is insufficient to invoke the doctrine without also demonstrating bias. *See Johnston*, 99 Wn.2d at 479; *see also State ex rel. Beam v. Fulwiler*, 76 Wn.2d 313, 456 P.2d 322 (1969). Although prejudging adjudicative facts is grounds for bias disqualification from acting in a quasi-judicial capacity, exposure to adjudicative facts alone does not operate as a disqualification. *See Withrow v. Larkin*, 421 U.S. 35, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975).

Prejudgment Bias

We first evaluate Dr. Clausing's prejudgment chal-

---

[6]There are also sound public policy reasons to reject Dr. Clausing's position. In this modern technological era, there are many expedient methods to conduct business. For example, video conferencing, internet conferencing, and telephone conference calls are all means to conduct transactions in an economical and efficient manner. These methods allow persons to be "present" to one another without the demands often required to achieve physical presence. In addition, when deciding a hearing location, the presiding officer must consider "accessibility, efficiency, and economy." WAC 246-10-112. This requirement is consistent with permitting the Board to choose to deliberate by telephone conference call.

lenge to the Board's decision. In *Withrow v. Larkin,* a state disciplinary board reviewed evidence, then notified Dr. Larkin of a "contested hearing" to decide the status of his professional license. The Court found no disqualifying prejudgment because the only position the board took was to call for a hearing on the basis of "probable cause" to believe Larkin violated the statutes at issue. *Id.,* 421 U.S. at 55. And in *Johnston,* 99 Wn.2d 466, our Supreme Court applied *Withrow* and found no due process violation where a doctor challenged a board's suspension order on prejudgment grounds. There, the board issued an order of summary suspension and the chairman later commented at the revocation hearing the reasons for the summary suspension. The Court held that "a general predilection toward a given result which does not prevent the agency members from deciding the particular case fairly" does not deprive due process. *Id.* at 475. Further, the Court noted that "given the board's duty to take emergency action to summarily suspend a physician's license if necessary to protect the public, its general predilection toward respondent's case is understandable and defensible." *Id.* at 474-76; *see also Olmstead v. Department of Health,* 61 Wn. App. 888, 893, 812 P.2d 527 (1991) (applying *Johnston* and concluding that prior consideration of summary suspension does not necessarily constitute blanket disqualification of Board members from participating in further proceedings); *Smith v. Mount* at 626 (finding Sheriff's role as the finder of probable cause insufficient to disqualify him from participating in forfeiture proceeding); *Hartwig v. Board of Nursing,* 448 N.W.2d 321, 324 (Iowa 1989) (holding board's summary suspension order was merely probable cause conclusion and did not constitute prejudgment; agency acted as court issuing a temporary injunction before a hearing on the merits); *compare Johnston,* 99 Wn.2d 466, *with Fulwiler,* 76 Wn.2d 313 (finding due process violated where four of five Civil Service Commission members conducted own investigation into employee fitness, recommended discharge, and refused to recuse themselves).

The *Johnston* decision speaks squarely to the prejudg-

ment concerns raised by Dr. Clausing. Just as the disciplinary board in *Johnston* had a duty to impose summary suspension, the Board here had similar statutory authority. *See* RCW 18.130.050(7), 34.05.422(4), 34.05.479. Any possible predilection toward Dr. Clausing's case that may have arisen from deciding the summary restriction is likewise understandable and defensible. Thus, because Dr. Clausing has made no showing of actual bias or ulterior motive, we find no prejudgment in the Board's actions.

Appearance of Fairness Doctrine

■■ ■■ In addition to its prejudgment analysis, the *Johnston* Court also examined the appearance of fairness doctrine. "Under the appearance of fairness doctrine, proceedings before a quasi-judicial tribunal are valid only if a reasonably prudent and disinterested observer would conclude that all parties obtained a fair, impartial, and neutral hearing." *Johnston*, 99 Wn.2d at 478 (citing *Swift v. Island County*, 87 Wn.2d 348, 361, 552 P.2d 175 (1976)). Dr. Clausing argues that the Board violated the appearance of fairness doctrine in ruling on both the summary restriction and final orders. He asserts that his case is analogous to the improper agency action in *Fulwiler*, 76 Wn.2d 313, where four of five civil service commission members initiated and personally participated in an investigation and recommended discharge of a city employee. The commission then adjudicated the discharge on appeal, refusing to recuse itself.

But the *Johnston* Court distinguished *Fulwiler* as not merely representing impermissibly overlapping functions, but also as a case of prejudgment bias. *See Johnston*, 99 Wn.2d at 479. Because we find no prejudgment bias in the mere fact that the same Board panel decided Dr. Clausing's summary restriction and final order revoking his license, *Fulwiler* is likewise distinguishable. Thus, we find no appearance of unfairness in the Board's actions.

AAG Conflict of Interest

Dr. Clausing also asserts his due process rights were violated because the AAG impermissibly acted as both counsel and prosecutor for the Board, and this dual role improperly influenced the Board. He cites *Medical Disciplinary Bd. v. Johnston*, 99 Wn.2d 466, 480, 663 P.2d 457 (1983), to support his argument. There, the Court held that merely combining adjudicative and investigative powers in one agency would not convince a reasonably prudent and disinterested observer that a party was denied a fair, impartial, and neutral hearing. *Id.* The Court also proposed that where the attorney general is posed with an actual conflict of interest, a different AAG should be assigned in order to relieve the inconsistent representation. *Id.*

Although the superior court granted Dr. Clausing's motion to supplement the record with discovery, he fails to cite evidence that the AAG in any way counseled the Board while also prosecuting Dr. Clausing. Neither does he make any citation to the record indicating that the AAG was placed in such an actual conflict of interest, and he fails to properly frame this argument with an assignment of error. Because he does not properly support his allegations, we find Dr. Clausing's assertions merely speculative and without merit.

### III. Substantial Evidence

Dr. Clausing's final contention is that the Board's final order is not supported by substantial evidence because it is based on "undisclosed documentary evidence" and "unfounded assumptions and speculation."[7] He also argues that the declarations and attached exhibits of Mr. Mobus, Shannon Walker, and Dr. Vilensky were never properly admitted into evidence, and that the Board improperly

---

[7]Although Dr. Clausing does not clearly state, we assume that this challenge is premised upon the APA's requirement that findings of fact be based only upon the evidence of record or officially noticed in the proceeding. *See* RCW 34.05.461(4).

amended its charging statement when it withdrew charges accusing Dr. Clausing of improperly prescribing to 101 patients.[8]

The APA governs the Board's hearing procedures when the Board is acting as a disciplining authority. *See* RCW 18.130.100. The APA specifically provides for the role of evidence in such hearings.

> (1) Evidence, including hearsay evidence, is admissible if in the judgment of the presiding officer it is the kind of evidence on which reasonably prudent persons are accustomed to rely in the conduct of their affairs . . . .

> (2) If not inconsistent with subsection (1) of this section, the presiding officer shall refer to the Washington Rules of Evidence as guidelines for evidentiary rulings.

> . . . .

> (4) Documentary evidence may be received in the form of copies or excerpts, or by incorporation by reference . . . .

RCW 34.05.452. Findings of fact entered in the final order must also meet this objective standard. But these "[f]indings may be based on such evidence even if it would be inadmissible in a civil trial. . . ." RCW 34.05.461(4); WAC 246-10-606. The Board is also entitled to rely on its "experience, technical competency, and specialized knowledge" to evaluate evidence. RCW 34.05.461(5); WAC 246-10-117. Because these evidentiary decisions lie within the agency's discretion, *see* WAC 10-08-200(5); *Side v. City of Cheney*, 37 Wn. App. 199, 202, 679 P.2d 403 (1984), the reviewing court's function is limited to ensuring the agency exercised its discretion lawfully, and must not "itself undertake to exercise the discretion that the legislature has placed in the agency." RCW 34.05.574.

---

[8]But Dr. Clausing assigns cites no authority to support these claims. Because such inadequately briefed arguments should not be considered on appeal, we do not reach these issues. *See Patterson v. Superintendent of Pub. Instruction*, 76 Wn. App. 666, 675, 887 P.2d 411 (1994) (citing *City of Spokane v. Taxpayers of the City of Spokane*, 111 Wn.2d 91, 96, 758 P.2d 480 (1988)); *see also* RAP 10.3(h).

Prescription Records

Despite Dr. Clausing's arguments to the contrary, we conclude the Board properly admitted copies of Dr. Clausing's prescriptions, and was, therefore, entitled to rely upon them in rendering its final order. Evidence that may be otherwise inadmissible at a civil trial may nonetheless be admitted in an administrative adjudicative hearing if it is the type of evidence reasonably prudent persons would be entitled to rely upon. *See* RCW 34.05.452(1). As the person responsible for investigating Dr. Clausing's prescription patterns, it was reasonable for the Board to rely upon Mr. Mobus's testimony and reports. And admitting copies of the voluminous prescription records in lieu of admitting all of the originals was consistent with both the APA and the evidence rules.[9] Under these circumstances, we find the Board exercised its discretion in accordance with law.

Dr. Vilensky's Testimony

Dr. Clausing also asserts that the Board improperly relied upon Dr. William Vilensky's expert testimony. He claims that because Dr. Vilensky examined only seven of his patients' medical records, Dr. Vilensky's conclusions were merely assumptions the Board was not entitled to rely upon. He also argues that the witnesses that testified on his behalf "destroyed" Dr. Vilensky's testimony. We disagree.

The Board, in its expertise, was entitled to draw its own inferences from the testimony and evidence presented to it. Even were we to find that Dr. Vilensky's testimony was conjectural, it would not contravene the Board's authority to enter its final order without the aid of expert testimony since seven of the Board's eight members must be licensed osteopathic physicians and surgeons as

---

[9]Specifically, RCW 34.05.452(4) permits documentary evidence to be submitted as copies, and ER 1006 provides:

The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. . . .

per RCW 18.57.002. *See, e.g., Johnston* at 482 (finding board properly drew its own conclusions as to acceptable surgical standards despite very little testimony on such standards on the record). It was likewise reasonable for the Board to draw its own inferences from Dr. Vilensky's testimony and to weigh his testimony in relation to Dr. Clausing's rebuttal witnesses. We do not substitute our judgment for that of the Board. Therefore, we find the Board's final order is supported by substantial evidence.

Affirmed.

KENNEDY, A.C.J., and GROSSE, J., concur.

Review denied at 136 Wn.2d 1020 (1998).