2005 ND 22

**Miles J. JONES, M.D., Plaintiff and Appellant**

v.

**NORTH DAKOTA STATE BOARD OF MEDICAL EXAMINERS–INVESTIGATIVE PANEL B, Defendant and Appellee.**

**No. 20040161.**

Supreme Court of North Dakota.

Jan. 19, 2005.

Larry J. Richards, Richards Law Office, Grand Forks, N.D., for plaintiff and appellant.

John M. Olson, Olson Cichy Bliss, Bismarck, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Miles J. Jones, M.D., appealed from a district court judgment affirming an order of the North Dakota State Board of Medical Examiners ("Board") revoking his license to practice medicine in North Dakota. We conclude the Board did not err in denying Jones's request to appear personally before the Board when it considered the recommendations of the Administrative Law Judge ("ALJ") and a reasoning mind reasonably could have found that Jones's conduct violated N.D.C.C. § 43–17–31(6) and (21). Because the Board did not explain in the conclusions of law and order its rationale for not adopting the ALJ's recommended sanction as required by N.D.C.C. §. 28–32–46(8), we reverse the judgment and direct the district court to remand the case to the Board for that purpose.

I

[¶ 2] Jones is a doctor who has been licensed to practice medicine in North Dakota since 1995. Jones also has been licensed to practice medicine in numerous other states as well. He is board certified in clinical and anatomic pathology and forensic pathology. Jones owns and operates Consultative and Diagnostic Pathology and provides pathology services throughout the United States. He serves as medical director of two laboratory services located in Illinois and Georgia. He has also served as an emergency physician. Approximately 75 percent of Jones's practice consists of performing autopsies, 15 percent is devoted to being a laboratory director, five percent involves medical-legal consultation, and the remaining five percent involves the practice of Internet medicine.

[¶ 3] In findings adopted by the Board, the ALJ explained:

8. Since 1998, Jones has served, without contract, as medical director of Net Doctor International which operates two websites, net-dr.com and maleclinic.com. He is not paid on a per-patient basis. Instead, he has a rather loose arrangement with the organization and he receives payment when cash flow permits. At one point Jones did not receive any payment at all for a two-year period. More typically, however, he receives a payment of approximately $5,000 every other month. Jones testified that the payment process is handled by a direct deposit into his business account in a bank in Kansas City.

9. The NET Doctor Group is a private company which uses a physician-designed world wide web site to collect patient information and medical history relevant to prescribing certain prescription drugs. It uses a questionnaire or information form on the web site for this purpose. The phy-

sician is associated with but not employed by the NET Doctor Group. The physician reviews the provided medical history for the NET Doctor Group. Exhibit 17.

10. The way the web site works is, essentially, a prospective patient seeking one of six FDA-approved, non-narcotic medications completes a detailed questionnaire. *See* R–33. The drugs available from the NET Doctor web site include Viagra, Xenical, Propecia, Celebrex, Vaniqa, and Cipro. Company staff then screens the questionnaire. If it has been completed appropriately, it is forwarded to Jones or some other physician for review and possible issuance of a prescription of one of the medications. Jones testified that 90% of the prescriptions issued are for Viagra. Jones then reviews the questionnaire and determines whether and how much to prescribe to the patient. Occasionally, a follow-up telephone call to the patient is required to secure further information. Jones testified that in the beginning he used to call the majority of the prospective patients; however, he has not found a personal call to be necessary in the vast majority of cases. He said the internet forms are complete and usually provided all of the essential information necessary to make an informed medical decision. Further, Jones testified that phone calls, when unnecessary, delay responsiveness to patient needs. Therefore, nowadays, such calls are much more infrequent, and more requests are quickly approved.

11. Jones testified that he has never been to the NET Doctor Group offices, [and] does not know the names or the backgrounds or qualifications of any of its staff or other physicians. In addition, he testified that he does not have any knowledge of the pharmacies that dispense medications that he approves.

[¶ 4] An undercover agent with the North Dakota Bureau of Criminal Investigation, using a fictitious name, completed a questionnaire for Net Doctor International and placed an Internet order from Bismarck for the prescription drug Cipro. The prescription the agent received was filled by Community Drug of Pittsburgh, Pennsylvania, and was prescribed by Jones. The Board's Investigative Panel B also received a printout through a Pennsylvania investigative agency showing Jones had prescribed Xenical through Community Drug to a person in Bismarck.

[¶ 5] Panel B filed a complaint requesting revocation of Jones's license to practice medicine in North Dakota. The complaint alleged Jones had repeatedly ·written prescriptions for patients over the Internet without first examining them or obtaining appropriate information from them. The complaint alleged that by doing so, Jones engaged in the performance of dishonorable, unethical, or unprofessional conduct likely to deceive, defraud, or harm the public in violation of N.D.C.C. § 43–17–31(6), and that he engaged in a continued pattern of inappropriate care in violation of N.D.C.C. § 43–17–31(21).

[¶ 6] The ALJ held a hearing on the matter in May 2002, but Jones was not present and was not represented by an attorney. The ALJ recommended that Jones's license be revoked, and the Board adopted the recommendation. Jones appealed, the district court granted Jones's request for leave to offer evidence under N.D.C.C. § 28–32–45, and the matter was

remanded to the Board to give Jones an opportunity to offer evidence.

[¶ 7] Another hearing was held before the same ALJ in May 2003. Jones was present at the hearing, was represented by an attorney, and testified on his own behalf. His attorney recalled witnesses from the first hearing for cross-examination. Jones also called other witnesses to testify, including two expert witnesses who had not testified at the first hearing. The ALJ again found that Jones had violated N.D.C.C. § 43–17–31(6) and (21), but instead of recommending revocation of Jones's license as an appropriate sanction, the ALJ recommended that Jones be fined, censured, and informed that "if Jones is found to be in further violation of N.D.C.C. § 43–17–31(6) and (21), with regard to internet prescribing in North Dakota, after the date of [the Board's] order, . . . his license to practice medicine in North Dakota will be revoked."

[¶ 8] Before the ALJ's recommendations were considered by the Board, Jones requested that he be allowed to appear personally before the full Board. The Board was scheduled to meet telephonically to consider the recommendations, and because Panel B had brought the complaint against Jones, only members of Panel A would be allowed to vote on the recommendations. Jones declined an invitation to address the Board at the telephonic conference. The Board adopted the ALJ's recommended findings of fact and conclusions of law, but rejected the recommended sanction, stating:

> IT IS FURTHER ORDERED that the Board's Order of July 26, 2002 revoking Dr. Jones' license to practice medicine in North Dakota is hereby affirmed. License No. 7255 previously issued by this [B]oard to Miles J. Jones, M.D. is revoked. Further, Miles J. Jones shall pay to the Board the reasonable and actual costs of the investigation and prosecution of this case, including reasonable attorney's fees.

The district court affirmed the Board's decision.

[¶ 9] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 28–32–42. Jones's appeal to this Court is timely under N.D.C.C. § 28–32–49 and N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–32–49.

## II

[¶ 10] Decisions of the Board are subject to limited judicial review. *Huff v. North Dakota State Bd. of Med. Exam'rs*, 2004 ND 225, ¶ 8, 690 N.W.2d 221. Under N.D.C.C. §§ 28–32–46 and 28–32–49, the district court, and this Court on further appeal, must affirm the Board's decision unless one of the following is present:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not

adopting any contrary recommendations by a hearing officer or an administrative law judge.

[¶ 11] As set forth in this Court's seminal case of *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979):

> In construing the "preponderance of the evidence" standard to permit us to apply the weight-of-the-evidence test to the factual findings of an administrative agency, we do not make independent findings of fact or substitute our judgment for that of the agency. We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record.

The Board's decisions on questions of law are fully reviewable. *Huff*, 2004 ND 225, ¶ 8, 690 N.W.2d 221.

A

[¶ 12] Although Jones was present at the hearing before the ALJ and presented evidence on his own behalf, Jones argues the Board erred in failing to allow him to appear personally before the Board when it reviewed and decided whether to accept or reject the ALJ's recommendations.

[¶ 13] Under N.D.C.C. § 28–32–39(3), the Board "may allow petitions for review of a recommended order and *may* allow oral argument pending issuance of a final order." (Emphasis added). When used in a statute, the word "may" ordinarily creates a directory, non-mandatory duty. *North Dakota Comm'n on Med. Competency v. Racek*, 527 N.W.2d 262, 268 (N.D.1995). Therefore, the Board was not required by the statute to allow oral argument pending issuance of the final order, and the Board's refusal to allow Jones to appear personally cannot be considered in violation of any statutory right.

[¶ 14] Jones argues he was denied due process by not being allowed a personal appearance before the Board when it considered the ALJ's recommendations. In determining whether a due process violation has occurred, we engage in a twofold inquiry: whether there is a constitutionally protected interest at stake; and, if so, whether minimum due process procedural requirements have been met. *Livingood v. Meece*, 477 N.W.2d 183, 193 (N.D.1991). While a license to practice medicine is a constitutionally protected property right, *Bland v. Comm'n on Med. Competency*, 557 N.W.2d 379, 381 (N.D. 1996), we believe Jones's procedural due process rights were not violated.

[¶ 15] There is no statutory prohibition against telephonic deliberations by the Board. *See, e.g., Clausing v. State*, 90 Wash.App. 863, 955 P.2d 394, 400 n. 6 (1998) (Board of Osteopathic Medicine and Surgery acted within its statutory authority in issuing summary restriction order after convening by telephone conference call, and noting "video conferencing, internet conferencing, and telephone conference calls are all means to conduct transactions in an economical and efficient manner"). Although Jones had been offered the opportunity to participate in the telephonic conference and address the Board, he elected not to participate. *Compare St. Claire v. St. Claire*, 2004 ND 39, ¶ 6, 675 N.W.2d 175 (a person's right to appear at a civil proceeding is satisfied by allowing appearance via telephone). Jones's evidentiary hearings before the ALJ were completed. Jones appeared at the last hearing, was represented by counsel, and presented evidence on his own behalf. The Board was deliberating the ALJ's recommended findings and conclusions, not holding another evidentiary hearing. Because Jones had no statutory right to appear

personally before the Board, and the Board's decision was based on the record compiled during the evidentiary hearings held before the ALJ, Jones had no due process right to a face-to-face confrontation with the Board. *Compare Mahaney v. State*, 610 A.2d. 738, 742 (Me.1992) (parole board's decision to deny parole without allowing inmate to personally appear did not deny inmate due process, because inmate had no statutory right to appear and parole decision must be made largely on the basis of the inmate's files). We conclude the procedure used in this case satisfied due process.

### B

■ [¶ 16] Jones argues the Board's conclusions that he violated N.D.C.C. § 43–17–31(6) and (21) are not supported by a preponderance of the evidence.

[¶ 17] Section 43–17–31(6) and (21), N.D.C.C., provides:

Disciplinary action may be imposed against a physician upon any of the following grounds:

. . . .

6. The performance of any dishonorable, unethical, or unprofessional conduct likely to deceive, defraud, or harm the public.

. . . .

21. A continued pattern of inappropriate care as a physician, including unnecessary surgery.

[¶ 18] Several physicians testified as experts for the Board. They testified that Internet prescribing based solely on a questionnaire is inappropriate and places the recipients of the prescriptions at risk. They expressed concern about the dangers of prescribing drugs to people the physician does not know, the potential for abuse because of Internet prescribing practices, and the lack of adequate safeguards in place to prevent abuse. Dr. George Porter, former Chairman of the Oregon Board of Medical Examiners who also was a member of the Special Committee on Professional Conduct in Ethics for the Federation of State Medical Boards and helped to write recommendations for the Internet practice of medicine, testified the Internet does not afford the opportunity for necessary physician/patient interaction. He testified that to prescribe medications, there should be a traditional physician/patient relationship. He testified this requires a "documented patient evaluation" or a "face-to-face evaluation in which the . . . patient actually presented their symptoms or their complaints," "dialogue . . . between the physician and the patient regarding the risk benefits of the treatment proposed," a "follow up of effectiveness of the treatment," and a "contemporaneous . . . medical record." The Special Committee recommended that before a prescription should be issued, there exist a documented evaluation of the patient, including a history and physical. It also recommended the owner of the Internet prescribing site be disclosed with a 24-hour telephone number so a patient can talk directly to a physician, a release be signed by the patient for medical records, and the physician's license and qualifications be adequately disclosed. This information is not available on websites affiliated with Jones.

[¶ 19] Jones presented expert witnesses who testified that his Internet prescribing practice does not breach the acceptable standard of care and that a physician/patient relationship over the Internet can achieve the same goals acquired with personal physician/patient contact. One witness admitted that people could obtain drugs over the Internet that were inappropriate for them and that Internet prescribing based solely on a questionnaire does not meet the stan-

dard of care established by most, if not all, state medical boards.

[¶ 20] Jones admitted to approving 15,-000 prescriptions during 2002. On the basis of Jones's testimony that he spends five percent of his practice on Internet prescribing, the ALJ and the Board calculated that if Jones worked 80 hours per week every week during 2002, he would have spent 208 hours approving 15,000 prescriptions, resulting in a total of 72 prescriptions per hour. The ALJ and the Board noted "[i]t is obvious that not much thought and attention can be given to each patient if one is reviewing 72 questionnaires per hour, especially reviewing the lengthy questionnaires in evidence in this hearing."

[¶ 21] The ALJ and the Board concluded:

3. Jones has repeatedly written prescriptions for patients over the internet, including North Dakota patients, without first examining the patient or obtaining all appropriate information from the patient. He approves the prescriptions of numerous patients each hour he works on internet prescribing. Although it may be possible to appropriately prescribe over the internet in North Dakota, it is clear that Jones' current actions in doing so place patients in North Dakota and elsewhere at risk. It is obvious that Jones's patients are simply lost in the volume and maze of the computer driven process. Again, although it may be possible to write prescriptions for patients over the internet if adequate safeguards are in place, adequate safeguards were not in place for Jones to write prescriptions in the cases that are the subject of this Complaint. Accordingly, the evidence shows, by the greater weight of the evidence, that while licensed as a North Dakota physician, Jones has engaged in a con-

tinued pattern of inappropriate care for patients in North Dakota and elsewhere within the meaning of N.D.C.C. § 43–17–31(21); and Jones has engaged in the performance of unprofessional conduct that is likely to deceive, defraud, or harm the public within the meaning of N.D.C.C. § 43–17–31(6). At the very least, Jones is providing inappropriate care for patients by prescribing drugs for them over the internet without adequate safeguards, and, at times, without adequate information. Also, prescribing drugs for patients over the internet without adequate information or adequate safeguards is unprofessional conduct that is likely to deceive, defraud, or harm the public. It is not necessary that actual harm, fraud, or deceit caused by Jones be shown. It is sufficient that harm, fraud, or deceit is likely to be caused by him because of his internet activities. In this case, the evidence is clear that harm, fraud, or deceit is likely to be caused.

[¶ 22] Having reviewed the record, we conclude a reasoning mind reasonably could have concluded that Jones's conduct violated N.D.C.C. § 43–17–31(6) and (21).

### C

[¶ 23] Jones argues the Board, in revoking his license, did not adequately explain its reasons for rejecting the ALJ's recommended sanction of a censure, fine, and warning.

[¶ 24] Under section 28–32–46(8), N.D.C.C., we reverse the Board's decision if the "conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge." The Board adopted the ALJ's findings and conclusions, but ordered revocation of Jones's license without any explanation in

the conclusions of law and order for rejecting the ALJ's proposed sanction. Under these circumstances, a reversal and remand is appropriate to allow the Board to explain its reasons for rejecting the ALJ's recommended sanction. *See Blanchard v. North Dakota Workers Comp. Bureau,* 1997 ND 118, ¶¶ 1, 29, 565 N.W.2d 485.

### III

[¶ 25] We reverse the judgment and instruct the district court to remand to the Board for an explanation of why it rejected the ALJ's recommended sanction.

[¶ 26] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 27] I concur in the opinion authored by Justice Sandstrom for the Court. I write separately to note that the only portion of the recommendations of the Administrative Law Judge not adopted by the Board was the recommendation for discipline. It might be argued that the discipline, as opposed to findings, are peculiarly the function of the Board. But, N.D.C.C. § 28–32–46(8), made applicable to our review by N.D.C.C. § 28–32–49, unambiguously requires that we affirm the Board's decision unless the conclusions of law and order of the Board do not sufficiently explain the Board's rationale for not adopting "any contrary recommendations by a hearing officer or an administrative law judge." Under N.D.C.C. § 28–32–31(4), made applicable to duties of an ALJ by N.D.C.C. § 54–57–04, the ALJ is to make "recommended findings of fact and conclusions of law and issue a recommended order, when appropriate." Again the statutory language is unambiguous. Neither party has argued it was inappropriate for

the ALJ to recommend an order including discipline. Rather on January 15, 2003, the Board requested an ALJ to "conduct the hearing and issue recommended findings of fact, conclusions of law, and order."

[¶ 28] The ALJ did issue "Recommended Findings of Fact, Conclusions of Law, and Order" and explained his reasons for the recommended sanctions in his Recommended Order:

What the appropriate discipline should be ordered is another matter considering the arguments made by Jones' counsel and the fact that North Dakota does not have specific rules on internet prescribing. Of most significance, in the ALJ's mind, is the fact that there was no actual harm shown and that Jones' internet practice is a small portion of his total practice. The ALJ does not believe that revocation is appropriate at this time. Instead, the ALJ recommends that the Board impose a fine not to exceed five thousand dollars ($5,000) on Jones for the violations of N.D.C.C. § 43–17–31 proven. If the Board orders Jones to pay a fine, the Board shall indicate by separate letter the amount of the fine it will impose, as well as the manner and terms of payment. The ALJ further recommends that the Board order Jones to pay a sum, to be determined by the Board, not to exceed the reasonable and actual costs, including reasonable attorney's fees, incurred by the Board and its investigative panel in the investigation and prosecution of this case under N.D.C.C. § 43–17–31.1. If the Board orders Jones to pay reasonable and actual costs, it shall indicate by separate letter attached to its final order an amount and the manner and terms for payment of those costs. Finally, the ALJ further recommends that the Board issue a letter of censure to Jones and that in its letter the Board state,

among other things, that if Jones is found to be in further violation of N.D.C.C. § 43–17–31(6) and (21), with regard to internet prescribing in North Dakota, after the date of its order, that his license to practice medicine in North Dakota will be revoked.

[¶ 29] The Board adopted the recommended Findings of Fact and the recommended Conclusions of Law but did not adopt the "Recommended Order." Rather the Board issued an order over the signature of its Chairman which read, without further explanation:

The evidence of record has been considered and appraised. IT IS ORDERED that the recommended findings of fact and conclusions of law of the administrative law judge are adopted as the Board's findings of fact and conclusions of law in this matter; IT IS FURTHER ORDERED that the Board's Order of July 26, 2002 revoking Dr. Jones' license to practice medicine in North Dakota is hereby affirmed. License No. 7255 previously issued by this board to Miles J. Jones, M.D. is revoked. Further, Miles J. Jones shall pay to the Board the reasonable and actual costs of the investigation and prosecution of this case, including reasonable attorney's fees.

It is apparent the Board has not explained its rationale for not adopting the "contrary recommendations by . . . an administrative law judge." The ALJ recommended revocation of the license to practice medicine after the first hearing at which Jones did not appear in person or by counsel. After the remand and second hearing, the ALJ gave specific and cogent reasons for recommending discipline other than revocation of Jones's license. Those reasons beg for an explanation by the Board if it chose not to follow the recommendation. Under N.D.C.C. § 28–32–46(8) we cannot affirm without an explanation of the Board's rationale in not adopting the Recommended Order.

[¶ 30] GERALD W. VANDE WALLE, C.J.